## Stanislaus Nawrocki, Administrator, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 15,051.

NEGLIGENCE—*when recovery cannot be predicated upon doctrine of res ipsa loquitur.* The presumption of negligence arising under the application of the doctrine *res ipsa loquitur* always yields to evidence which explains the cause of the occurrence; there is no room for the presumption where there is evidence disclosing the cause of the occurrence; in such case negligence, or the absence of negligence, must be determined upon the evidence.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed. Opinion filed July 15, 1910. Rehearing denied July 26, 1910.

FRANKLIN B. HUSSEY and WATSON J. FERRY, for appellant.

N. L. PIOTROWSKI and CYRUS J. WOOD, for appellee.

MR. PRESIDING JUSTICE CHYTRAUS delivered the opinion of the court.

In a trial by jury the plaintiff recovered a judgment in the Circuit Court against the defendant, for the death of his intestate occasioned by the failure of a street car operated by defendant to "take" or follow a switch in defendant's car tracks.

After a most careful examination of this record we are unable to find any evidence tending to show negligence attributable to the defendant. No negligence being shown on the part of the defendant there can, of course, be no recovery by the plaintiff, although plaintiff's intestate was injured in connection with defendant's car.

Defendant operated a system of street cars in the city of Chicago. That system included a line of street cars on Arch-

er avenue, which is a street running northeast and south-west, and a line running on Pitney court and Thirty-first street. Pitney court is a street running northwest and south-east but nearly north and south. Thirty-first street runs east and west. The Pitney court and Thirty-first street line of cars, with one of the cars upon which line we are more particularly concerned, began in Pitney court, where that street comes into Archer avenue, and ran south or southeast in Pitney court and then east in Thirty-first street. Pitney court had two car tracks and the Pitney court and Thirty-first street cars in their course came from Thirty-first, passed north in the east track in Pitney court and stopped at Archer avenue. These cars in returning south from this point switched into the west or south-bound track in Pitney court by a switch located a short distance south of Archer avenue— perhaps sixty or eighty feet. The witnesses do not agree in estimating the distance and the exact distance is immaterial. At that switch plaintiff's intestate, John Tanka, met his death by falling off the rear platform of one of defendant's cars. The accident occurred at about noon on February 28, 1904, and his fall, upon the evidence herein, must be regarded as occasioned by the swaying or jolting of the car at the switch. In the fall Tanka apparently broke his neck and he died in a very few minutes. He was a passenger coming from the Archer avenue line by transfer. The plaintiff recognizes the unquestionable rule in the law of evidence, as to the burden of proof, that the party seeking to recover compensation for an injury sustained must make out that the party against whom he complains was at fault and that where, as here, the cause of action is predicated upon negligence of the defendant he must make out that the defendant was negligent. It is true that sometimes, as when the instrumentality which causes the accident is wholly within the control of the defendant, the law of evidence relieves the plaintiff to the extent that negligence may be *presumed* from the nature of the occurrence and the conditions and circumstances surrounding the occurrence.

To establish negligence in the case at bar plaintiff places

his reliance principally upon the doctrine of *res ipsa loquitur* and upon the theory "that the occurrence was one that would not ordinarily happen were due care and diligence used by the common carrier." The "occurrence," in the case at bar, was the derailing of the car which happened at the switch. One difficulty, however, met with by the plaintiff, in invoking the doctrine of *res ipsa loquitur* in this case, is that the presumption arising under that doctrine must always yield to evidence which explains the cause of the occurrence. There is no room for the presumption where there is evidence disclosing the cause of the occurrence. In such case negligence or the absence of negligence must be determined upon the evidence.

From the evidence herein it appears that Tanka was upon the rear platform of a car which started south from Archer avenue upon the east or north-bound track on Pitney court. The car was travelling at the rate of about four miles an hour and was intended to pass from the north-bound to the south-bound track by way of the switch and the track which connected the two tracks at that point. When the car reached the switch the front wheels of the car did not run into the switch but continued south in the north-bound track. The hind wheels, however, did go into the switch and were derailed and the car ran a few feet before it was stopped. Tanka was on the rear platform of the car but his exact position there is a matter of considerable dispute. The jolting or swaying of the car caused him to fall toward one side and to fall off the car and in the fall he broke his neck. It may properly be stated, as bearing on the extent of the jolting or swaying, that a witness, who stood on the rear platform, testified that he stood without in anywise supporting himself and that, although he grabbed nothing to support himself, he could not recall that the movement of the car was violent or that it threw him off his balance.

With reference to the front wheel not taking the switch and the rear wheel doing so and becoming derailed it appears that the switch was an automatic spring switch so constructed that the tongue thereof was always toward the east side of the

switch; that when a car came on the east track going north the flange of the wheels would pry the tongue over sufficient to pass but it would spring back immediately; that the tongue would thus always be open for cars going south to pass into the track connecting the north-bound and the south-bound tracks; that the switch consisted of a tongue about five feet long which came to a sharp point in the north end and was about five inches wide in the south end and which was laid in a grooved rail, the groove being about an inch and a half or two inches in depth with the sides of the groove slightly higher than the tongue and that the movement of the tongue was controlled by a spring which was underneath. It appears, also, that this switch was inspected every morning by an inspector for the defendant and that it was inspected at seven o'clock on the morning of the day in question and found to be in good condition and unobstructed; and that during the forenoon cars, including the car in question, passed over it every few minutes. When the car in connection with which the accident occurred passed over the switch going south it appears the switch was filled with muddy water. After the accident happened the motorman examined the switch to ascertain what had occasioned the trouble. In the muddy water filling the groove of the switch, at a point about one foot from the north end of the switch, he found a large iron bolt. This bolt, which was introduced in evidence in the court below and is here with the record as an exhibit, was found with the head toward the north. It has a head one inch square and is five inches long. This bolt is such that as it lay in the groove of the switch it could very readily have forced the front wheel out of the grove on one side of the tongue so that it would run into the other side of the tongue. If the bolt were east of the tongue the front wheel would naturally continue south on the north-bound track. The contact of the front wheel with the loose bolt, while it did not force it out of the switch groove, must have disturbed it or moved it somewhat. It is shown in the evidence that the bolt is not one used in connection with any of the cars running upon that line, so the defendant's connection with and re-

sponsibility for the bolt is, with reasonable certainty, excluded. The bolt must have come to the place where it was found through some other agency than the defendant. The evidence relative to the bolt shows that the mis-switching of the front wheels and the derailing of the hind wheels of the car was not occasioned by any defect either in the rails of the defendant's tracks, in the car itself or in the management or operation of the car. The mis-switching and derailing must be attributed to the presence of the bolt in the switch. The jolting and swaying of the car which caused Tanka's fall was brought about by the presence of the bolt in the switch. Clearly the presence of the bolt in the switch cannot, under the evidence herein, be attributed to the negligence of the defendant nor can the motorman be considered negligent in not discovering the presence of the bolt in the muddy water. The car, as stated, was running at a speed of about four miles an hour and this cannot be regarded as a negligent operation of the car.

There is no room for the application of the doctrine of *res ipsa loquitur* in this case. The nature of the occurrence— the failure of the front wheel to take the switch—is not such as to suggest a defect in the mechanism of the car itself. It would rather suggest the existence of some defect in the switch. In view of the fact that during the day in question the car had frequently passed over the switch without mishap, this is particularly so. The evidence is clear that defendant inspected the switch every morning and specifically the morning of the day in question. The switch was in good order at seven o'clock in the morning of the day in question. Furthermore, while the Chicago City Railway Company, so far as its passengers are concerned, is charged with a high degree of care with reference to the switch, yet it cannot be said that the switch is a piece of machinery wholly within its charge and control. The switch was located in a public highway. The public authorities had general control of the highway. Not only the Railway Company but the public generally had access to the switch. Its defective operation may have been caused as well by the act or negligence of

someone else as by the act or negligence of the Railway Company. We do not accede to the proposition that the principle in the law of evidence generally known as the doctrine of *res ipsa loquitur* relieved the plaintiff herein, in so far as he relied upon negligence in that there was something defective about the switch, of the *onus* of showing negligence on the part of the defendant.

The judgment of the trial court must be reversed.

*Reversed.*

MR. JUSTICE MACK took no part in the consideration or the decision of this case.